# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **LARRY L. HENDERSON,** | ) |
| Plaintiff, | ) |
| v. | ) No. 4:15-cv-00480-NCC |
| **PAUL LISTENBERGER, and** | ) |
| **ST. LOUIS COUNTY, MISSOURI,** | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant St. Louis County, Missouri's Motion for Summary Judgment (Doc. 41) and Defendant Paul Listenberger's Motion for Summary Judgment (Doc. 44). Plaintiff has not responded and the time for doing so has expired.[1] Accordingly, the Motions are ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c)(1) (Doc. 24). For the following reasons, Defendants' Motions for Summary Judgment will be **GRANTED** and this case will be **DISMISSED with prejudice.**

### I. Background

On March 16, 2015, *pro se* Plaintiff Larry L. Henderson ("Henderson") filed this action

---

[1] Defendants filed their Motions for Summary Judgement on January 12, 2016. Plaintiff's responses were due on or before February 3, 2016. *See* Local Rule 4.01. On March 15, 2016, the Court entered a show cause order, giving Plaintiff until March 28, 2016, to respond to Defendants' pending Motions. In the Order, Plaintiff was warned that failure to respond would result in the Court ruling on Defendants' unopposed motions. On March 28, 2016, Plaintiff emailed the Clerk of Court and requested that the Court file the email as his official motion for enlargement of time. In an order dated April 15, 2016, the Court indicated it would not file Plaintiff's email on the record because email correspondence with the Court is not permitted by local rule and warned that the pending Motions were under review by the Court and no further

pursuant to 42 U.S.C. § 1983 alleging deliberate indifference of his serious medical condition and deprivation of food. Specifically, Henderson alleges that he requires a gluten-free diet because he has celiac disease.[2] Henderson states that he also suffers from diabetes. Defendant Paul Listenberger ("Listenberger") is the food service manager at the Saint Louis County Justice Center, where Henderson was incarcerated. Henderson alleges that despite his medical restrictions, Listenberger continued to serve him food containing gluten that caused him severe gastrointestinal distress and difficulty maintaining a stable blood sugar. Henderson also alleges that Defendant St. Louis County ("the County") is liable because the County failed to implement a policy relating to the proper nutrition and food management of inmates who suffer from celiac disease, like Henderson, who should only be fed food that is labeled and certified as gluten-free. Henderson argues that there should be a policy about food-handling so that cross-contamination does not occur. Henderson requests a "standing order to provide only certified food item[s] by the manufacturer a 'gluten-free' item" and money damages in the amount of $2.5 million dollars.[3] The undisputed facts are as follows.[4]

---

briefing would be accepted without good cause shown.
[2] "Celiac disease is an immune reaction to eating gluten, a protein found in wheat, barley and rye." Mayo Clinic, Celiac Disease, http://www.mayoclinic.org/diseases-conditions/celiac-disease/basics/definition/con-20030410 (last visited June 2, 2016).
[3] Henderson previously filed these claims before this Court in *Henderson v. U.S. Marshals Service, et al.*, Case No. 4:15-cv-399-HEA (E.D. Mo.). That case was dismissed without prejudice on initial section 1915 review because Henderson did not allege that he had been given any food containing wheat, barley, or rye nor did he allege that he suffered any injuries or ill results from the food he was provided. Memorandum and Order at 2, *Henderson v. U.S. Marshals Service, et al.,* Case No. 4:15-cv-399-HEA (E.D. Mo. Mar. 5, 2015).
[4] The facts are taken from the County's Statement of Uncontroverted Material Facts (Doc. 43) and Listenberger's Statement of Uncontroverted Material Facts (Doc. 45). Plaintiff did not respond to either the County's or Listenberger's Statements of Uncontroverted Material Facts. Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a

Larry Henderson, a Federal inmate, was housed in St. Louis County Jail from July 22, 2014 to May 4, 2015 (Ex. W). When Henderson entered the Jail in 2014, he reported a history of celiac disease to Corrections Medicine staff (*Id.*). Corrections Medicine staff never received or obtained any medical records, such as reports, tests or biopsies to support this diagnosis (*Id.*). As a precaution, Corrections Medicine staff ordered a gluten free diet for Henderson on July 22, 2014 and nursing staff entered the requirement in the Integrated Jail Management System (IJMS) (*Id.*). Henderson also has a history of diabetes and reported allergies to eggs and to seafood (*Id.*).

Herbert Bernsen ("Bernsen") is the Director of the St. Louis County Department of Justice Services ("DJS"), which operates the St. Louis County Jail (Affidavit of Herbert Bernsen ("Bernsen Aff.") ¶ 2, Docs. 42-41, 46-1). As Director of the St. Louis County Department of Justice Services, Bernsen's duties are to supervise and manage the operation of the St. Louis County Jail and to implement and enforce DJS policies and procedures (Ex. B, Bernsen Aff. ¶ 7). DJS has a policy and procedure manual which covers the operation of all aspects of the St. Louis

---

> statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E). As a result of Plaintiff's failure to submit any response, Plaintiff has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted all facts in Defendants' Statements of Uncontroverted Facts. *Turner v. Shinseki*, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing *Deichmann v. Boeing Co.*, 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999)). However, Plaintiff's failure to respond properly to Defendants' Motions for Summary Judgment does not mean summary judgment should be automatically granted in favor of the Defendants. Even if the facts as alleged by the Defendants are not in dispute, those facts still must establish they are entitled to judgment as a matter of law. *Cross v. MHM Corr. Servs., Inc.*,

County Jail (Ex. A). Every inmate entering the Jail receives a copy of the DJS Inmate Handbook which provides information on housing rules, inmate rights and privileges, inmate discipline, meals and healthcare, among others (*Id.*; Ex. NN). Especially relevant to this case are DJS Policies 1003 and 1002.

DJS Policy 1003 is the policy concerning special inmate diets and states that special diets, including religious diets and medical diets, are provided to inmates (Ex. C). A medical diet is a special diet provided to a jail inmate based on his or her medical needs (*Id.*). DJS Policy 1003 states that a medical diet for an inmate must be approved by a physician or dentist (*Id.*). Under DJS policy, a gluten free diet is a medical diet because an inmate may have a gluten allergy or be gluten intolerant (Affidavit of Paul Listenberger ("Listenberger Aff.") ¶13, Docs. 42-42, 46-2). DJS Policy 1002 concerns inmate meals and states that inmates will be provided three meals a day which are nutritionally adequate (Ex. D). Policy 1002 also requires that DJS menus be reviewed each year by the Department of Health for nutritional adequacy (*Id.*).

The kitchen has a procedure for preparing gluten free meals (Ex. T). Gluten free food preparation is done separately from other food preparation to prevent cross-contamination (Ex. T, Listenberger Aff. ¶¶ 40-41). The gluten free food for each week is prepared only in the special diet section of the kitchen (Ex. T, Listenberger Aff. ¶ 40). Gluten free food is cooked and prepared only on Monday prior to any flour being used or any baking being done (Ex. T, Listenberger Aff. ¶ 43). Before the gluten free food is prepared, the preparation table, all utensils, cookware and the slicing machine are sanitized with a sanitizing solution (Ex. T, Listenberger Aff. ¶ 44). After the food is cooked, it is portioned, wrapped in plastic wrap or covered, dated and marked as gluten-free (Ex. T, Listenberger Aff. ¶ 40). It is then refrigerated or frozen (Ex. T,

---

No. 4:11CV1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

Listenberger Aff. ¶ 45). Meals are taken from the kitchen by elevator to the housing floors at the Jail, where the trays are distributed to inmates by other inmates (Listenberger Aff. ¶ 17).

DJS employs special diet cooks to prepare special meals including gluten free meals (Listenberger Aff. ¶ 39). The DJS special diet cooks are Theresa Roberson ("Roberson") and Tameka Davis ("Davis") (*Id.* ¶22). They have completed 140 and 115 hours of continuing education, respectively, since January 31, 2010 (Exs. G, H). Their training has included food service training and facility safety and sanitation (Exs. G, H). Roberson and Davis are trained on the procedures for cooking gluten free food and preparing daily meals from this type of food (Listenberger Aff. ¶ 39).

Listenberger has been employed by St. Louis County, Missouri as the food service manager at DJS since 2013 (*Id.* ¶¶ 2-3). Listenberger became aware that Henderson was approved for a gluten free diet on or about July 28, 2014 after it was approved by medical staff and entered in IJMS (Ex. W, Listenberger Aff. ¶ 18). Listenberger created a gluten free menu based on his knowledge (Listenberger Aff. ¶ 23). Listenberger contacted dietician Karen Peters ("Peters"), who works at the St. Louis County Department of Public Health, and asked her to review the gluten free menu (Ex. U, Listenberger Aff. ¶ 25).

Peters is licensed with the State of Missouri and is registered with the Commission on Dietetic Registration (Affidavit of Karen Peters ("Peters Aff.") ¶ 4, Docs. 42-44, 46-4). Peters is familiar with celiac disease and is qualified to develop gluten free menus for people who have celiac disease or who are gluten intolerant (*Id.* at ¶¶ 9, 13). Peters developed a 2,500 calorie a day, gluten free menu for Mr. Henderson (*Id.* at ¶ 25-26). Peters approved a gluten free menu on August 4, 2014 (Ex. U, Peters Aff. ¶ 28). The gluten free menu was also reviewed and approved by Peters' supervisor, Lynn Sojka (Ex. EE, Peters Aff. ¶ 44, Affidavit of Lynn Sojka ¶¶ 2, 21-

24). Because use of the terms "gluten free," "free of gluten," "no gluten," and "without gluten" are voluntary claims by food manufacturers who may elect to use these terms in the labeling of foods, Peters instructed Listenberger that all ingredient labels should be checked for gluten and assisted Listenberger in doing this (Ex. U, Peters Aff. ¶ 29). *See also* C.F.R. § 1001.91. Listenberger sent Peters ingredient labels of food used in the Jail's kitchen and recipes used in the kitchen and she analyzed them (Peters Aff. ¶¶ 30-31).

Peters revised the menu on multiple occasions as "diabetic," "no egg," and "no vegetables" restrictions were added to the menu (Ex. V, Peters Aff. ¶¶ 45-47, 51-52). In doing so, Peters performed a nutritional analysis of the menu, including determining values for micronutrients, vitamins, minerals and amino acids (Ex. V, Peters Aff. ¶ 47). To do this analysis, she used Nutritionist Pro, a well-known software program used by dieticians (Ex. V, Peters Aff. ¶ 48). She also reviewed the Academy of Nutrition and Dietetics, the industry standard for the field of dietetics (Peters Aff. ¶¶ 42, 54). Following this analysis, on August 27, 2014, Peters determined that the no gluten, no egg, diabetic menu was nutritionally adequate (Ex. V, Peters Aff. ¶ 49). In November 2014, by Federal Court Order, Henderson's menu was further restricted to exclude vegetables (Ex. KK). A revised menu was also approved by Peters (Ex. CC).

Soon after arriving, Mr. Henderson filed grievances about the turkey bologna not being certified gluten free (Listenberger Aff. ¶ 31). Following an investigation into his grievances, Mr. Henderson's appeals of these grievances were denied but only after Listenberger contacted the manufacturer to confirm that gluten was not contained in the bologna (Exs. FF, LL, MM). After the menus were put in place, Henderson complained to jail staff that his meals were not certified as gluten free (Listenberger Aff. ¶ 75). He also complained that the food trays he received contained items with gluten and that his food was cold or that his tray had "questionable items"

6

on it (*Id.* ¶ 76). Listenberger became aware that food trays containing gluten had been delivered to Henderson and that some of his trays contained gluten food items from other trays (*Id.* ¶ 78). In response, Listenberger instructed kitchen staff to mark all of Henderson's trays with "L.H." and "gluten free" (*Id.* ¶ 88). Listenberger also instructed the lieutenants at unit control to allow Henderson to pick up his own food tray at unit control and, if Henderson complained, directed the lieutenants to call him directly (*Id.* ¶¶ 89, 90). Listenberger also began inspecting the trays prior to breakfast and lunch to make sure there was nothing wrong with them (*Id.* ¶ 93). Listenberger ensured a new tray was prepared for Henderson if he complained unless Listenberger had previously inspected it and nothing was wrong with it (*Id.* ¶ 95).

While Henderson was housed in the Saint Louis County Jail, he received treatment from Dr. Fred Rottnek, M.D. ("Rottnek"), the Medical Director of Saint Louis County Department of Public Corrections Medicine (Affidavit of Fred Rottnek ("Rottnek Aff.") ¶ 2, Docs. 42-45, 46-5). Rottnek saw Henderson six times as a patient at the Jail beginning in 2010, including on December 23, 2014 during his most recent confinement at the Jail (*Id.* ¶ 8). Rottnek reviewed Henderson's medical records for 2014 and 2015 (*Id.* ¶ 10). During the time that Rottnek treated Henderson, he presented as a healthy individual (*Id.* ¶ 27). Henderson was also seen by the Corrections Medicine staff of nurses, the clinical pharmacist, the physician assistant and the psychologist (*Id.* ¶ 9). Henderson's medical records show that he made subjective claims of abdominal and gastrointestinal pain, diarrhea and constipation (Ex. Y). Henderson was instructed to report these symptoms at a time when staff was present so they could be witnessed by medical staff and charted (*Id.*). These claims were never substantiated by objective observations of medical staff, but nursing staff still provided Henderson Maalox, Tums and Pepto-Bismol because of his subjective complaints (*Id.*). Henderson's medical records show that he stated to

7

medical staff that he skipped meals because he did not believe they were gluten free (*Id.* ¶32). Henderson's medical records do not show any objective evidence that his celiac disease worsened while he was at the Jail (*Id.* ¶ 41). During his confinement at the Jail, Henderson's diabetes was successfully managed by the medical staff, despite his frequent refusal to take insulin, to allow nurses to check his blood sugar, or to follow a proper diabetic diet (Exs. X, BB).

On January 12, 2016, Defendants filed Motions for Summary Judgment asserting that the claims against them should be dismissed with prejudice (Docs. 41, 44). In his Motion for Summary Judgment, Listenberger first asserts that Plaintiff's claim for injunctive relief cannot be granted because he is no longer at DJS. Listenberger then argues that Henderson failed to establish an Eighth Amendment claim because (1) he has not provided medical records in support of his celiac condition; (2) the Jail staff provided Henderson with a gluten free diet despite a lack of medical records; (3) the mistakes made in feeding Henderson were quickly remedied and do not amount to constitutional violations; (4) Defendants provided Henderson with nutritionally adequate food; and (5) Henderson failed to show any injury as a result of his claims. Finally, Listenberger asserts that he is entitled to qualified immunity because Henderson failed to establish that Listenberger violated Henderson's constitutional rights and Listenberger's actions were objectively reasonable in light of what he knew. In its Motion for Summary Judgment, the County argues that Henderson failed to establish municipal liability under Section 1983 because the County has a policy for medical diets which include gluten free diets.

## II. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant,*

*Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Plaintiff's pro se status does not excuse him from responding to Defendants' motions with specific factual support for his claims to avoid summary judgment, *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001), or from complying with local rules, *see Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983). *See also Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir.1993) (failing to allow pro se prisoner to disregard Federal Rules of Civil Procedure). *See* Fed. R. Civ. P. 56(e) ("[An] adverse party may not rest upon the mere allegations or denials of ... [his] pleading, but ... [must], by affidavits or as otherwise provided in this rule, ... set forth specific facts showing that there is a genuine issue for trial."); *Anderson*, 477 U.S. at 249–52 (explaining that nonmovant must offer controverting affidavits or evidence from which a reasonable jury could return a verdict in his favor).

In determining whether summary judgment is appropriate in a particular case, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Benford v. Correctional Medical Services*, 2012 WL 3871948, at *4 (E.D. Mo. Sept. 6, 2012) (citing *Celotex Corp.*, 477 U.S. at 331). The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* (citing *Anderson*, 477 U.S. at 249). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)).

**III. Analysis**

**A. Injunctive Relief**

As a preliminary matter, Henderson's request for injunctive relief must be denied because he is no longer housed at the Saint Louis County Jail. Henderson is confined at Butner Low Federal Correctional Institution[5] where he is serving a federal sentence. *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009) (inmate's claims for injunctive and declaratory relief become moot when inmate is transferred and is no longer subject to policy at issue). Therefore, his claim for injunctive relief is moot.

**B. Alleged Eighth Amendment Violations**

Henderson asserts Eighth Amendment violations; he says Defendants were deliberately indifferent and did not treat his celiac disease, denied him access to a proper and nutritious diet, and refused to accommodate him regarding his food allergy. Although Henderson has not explained whether he is pursuing a deliberate indifference claim as it relates to his medical treatment or, alternatively, a cruel and unusual punishment claim as it relates to the food he received, in an abundance of caution, the Court will address both issues because the Eighth Amendment requires prisoners to receive adequate medical care as well as "food that is adequate to maintain health." *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *LeMaire v. Maass,* 12 F.3d 1444, 1456 (9th Cir. 1993) (citing *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977)).

**1. Adequate Medical Care**

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious

---

[5] Find an inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 3, 2016).

medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). The "deliberate indifference" standard applies to a prisoner's challenge to medical treatment. *Wilson v. Seiter,* 501 U.S. 294, 303 (1991). Deliberate indifference has both subjective and objective components. A plaintiff must show (1) that he suffered from an objectively serious medical need and (2) that the prison officials actually knew of, but deliberately disregarded, that need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). To be objectively serious, the medical need must be "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir. 1991). Negligence or medical malpractice does not constitute a constitutional violation. *Estelle,* 429 U.S. at 106. "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Allard v. Baldwin*, No. 14-1087, 2015 WL 921006, at *3 (8th Cir. Mar. 5, 2015) (internal quotation omitted) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)).

      Viewing the evidence in the light most favorable to Henderson, the treatment provided was not criminally reckless and therefore does not rise to the level of deliberate indifference. First, Henderson failed to establish an objectively serious medical need. DJS medical records do not indicate that Henderson suffers from celiac disease and Henderson did not provide the Court with any medical records supporting his diagnosis. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir.1994); *see also Aswegan v. Henry*, 49 F.3d 461, 465 (8th Cir.1995) (prisoner's bare assertion of a serious medical condition is insufficient without medical evidence verifying that the condition exists). Second, despite not having any medical evidence in support of Henderson's allegations of celiac disease, Defendants treated Henderson as if he had the medical condition

and in accordance with DJS policy. Corrections Medicine staff ordered Henderson a gluten free diet. Accordingly, Listenberger, as the food service manager, worked with Peters, a registered dietician, to formulate proper dietary menus as Henderson's dietary needs evolved during his time at the Saint Louis County Jail. Special dietary cooks prepared the meals, and the meals were delivered to Henderson. When Henderson filed a grievance or otherwise complained, Listenberger reviewed the meals and acted to correct any mistakes. Corrective action included allowing Henderson to pick up his own tray and instructing unit managers to get him a new one if he had complaints. Furthermore, although his symptoms of abdominal and gastrointestinal pain, diarrhea and constipation were never corroborated, Corrections Medicine staff provided Henderson with Maalox, Tums and Pepto-Bismol. Therefore, Henderson's claim of deliberate indifference to his celiac disease is not supported by the record and is denied.

**2. Adequate Food**

The Eighth Amendment also requires that prisoners "receive food that is adequate to maintain health." *LeMaire,* 12 F.3d at 1456. *See also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted) ("The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."). The repeated and unjustified failure of prison officials to provide adequate sustenance can be a serious deprivation amounting to cruel and unusual punishment. *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) (denying summary judgment to guard who repeatedly refused to deliver meals to inmate). The risk that an inmate might suffer harm as a result of the repeated denial of meals "is obvious." *Id.* However, mere dissatisfaction with the variety, portion size or savor of his prison diet is not sufficient to state a

claim. *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating foreign objects or cold and unpleasant food is insufficient to state an Eighth Amendment claim).

Viewing the evidence in the light most favorable to Henderson, the Court finds that Defendants provided Henderson with a proper and nutritious diet. Again, following DJS policy, Listenberger worked with Peters to formulate appropriate menus as Henderson's dietary needs evolved. Peters performed a nutritional analysis of the menus using Nutritionist Pro, a well-known software program used by dieticians. She also reviewed the Academy of Nutrition and Dietetics, the industry standard for the field of dietetics. Further, Peters' supervisor, Sojka, approved the menus. Accordingly, the Court finds Defendants met their affirmative duty to provide Henderson with nutritionally adequate food. *Cf. Day v. Norris*, 219 F. App'x 608, 610 (8th Cir. 2007) (finding dismissal premature where petitioner was provided "meals which did not meet the standards of a 2,000-calorie diet plan; the food portions were small and the quality of food was nutritionally inferior; milk was served only at certain units; only four (4) ounces of fruit juice was served and the vegetables were 'often rotten' and 'sometimes' contained dirt or other foreign objects; he was served powdered eggs which made him sick; and food service workers did not always wash their hands before food preparation, sometimes dripped sweat or purposefully placed other body fluids in the food, and were not adequately tested for communicable diseases"). While Henderson disagrees that the gluten free diet provided to him was adequate and he would have preferred a "certified" gluten free diet, his dissatisfaction does not rise to the level of a constitutional violation. *Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir. 1990) ("Control of the diet is within the discretion of prison authorities, presuming it is adequate."). Therefore, Henderson's claim for failure to provide adequate food is denied.

**C. Qualified Immunity Defense**

Listenberger also raises the affirmative defense of qualified immunity. Qualified immunity shields public officials "from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). To overcome a defendant's qualified immunity claim, the plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quotations omitted). "The law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when the officials acted." *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005) (citing *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002)); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right"). If a state official violates a clearly established constitutional right, he is not entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

In this case, the Court has found that the facts—when viewed in the light most favorable to Henderson—do not demonstrate the deprivation of a constitutional right. Moreover, the Court previously denied Henderson's request for injunctive relief. All that remains is his request for money damages. *Curtiss v. Benson*, 583 F. App'x 598 (8th Cir. 2014) ("qualified immunity does not apply to claims for equitable relief") (quoting *Grantham v. Trickery*, 21 F.3d 289, 295 (8th Cir. 1994)). Accordingly, the Court finds that Listenberger is entitled to qualified immunity on Henderson's claims against him.

## IV. Conclusion

**IT IS HEREBY ORDERED** that Defendant St. Louis County, Missouri's Motion for Summary Judgment (Doc. 41) and Defendant Paul Listenberger's Motion for Summary Judgment (Doc. 44) are **GRANTED** and this case is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

**IT IS FURTHER ORDERED** that, in light of the Court's decision to grant Defendants' Motions for Summary Judgment, the remaining pending Motions (Docs. 37, 38) are **DENIED, as moot.**

Dated this 27th day of June, 2016.

                                              /s/ Noelle C. Collins
                                              NOELLE C. COLLINS
                                              UNITED STATES MAGISTRATE JUDGE